IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHERYL CARREIRA,

      Plaintiff,                            No. CIV S-09-1672 EFB

     vs.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

      Defendant.                     ORDER

_____/

     Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability benefits under Title II and XVIII of the Social Security Act. For the reasons discussed below, the court grants defendant's motion for summary judgment and denies plaintiffs motion for summary judgment.

I. BACKGROUND

     Plaintiff filed an application for disability insurance benefits on July 21, 2006, alleging disability since April 25, 2003. Administrative Record ("AR") 9. Her application was denied initially and upon reconsideration. *Id*. A hearing was held on February 26, 2008, before Administrative Law Judge ("ALJ") Daniel J. Heely. *Id.* at 20-42. Plaintiff was represented by attorney Robert Kolber. *Id.* at 22. Plaintiff and vocational expert George Meyers testified. *Id.*

////

In a decision dated May 29, 2008, the ALJ determined plaintiff was not disabled.[1]  *Id.* at 6-19.

The ALJ made the following specific findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since April 28, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*)
> ...
>
> 3. The claimant has the following severe impairments: left foot fracture, status post multiple surgeries, degenerative joint disease/back strain and depression (20 CFR 404.1520(c)).
> ...

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

2

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
> ...
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has a residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she should push and/or pull only occasionally with the left lower extremity. The claimant can occasionally climb ramps, stairs, ladders, ropes or scaffolds, stoop, kneel, crouch or crawl. She can balance frequently. She is limited to reaching occasionally with the bilateral extremities. The client retains the ability to understand, remember and carry out simple job instructions but is limited in her ability to respond appropriately to the general public and should have only occasional public contact.
> ...
>
> 6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565).
> ...
>
> 7. The claimant was born on April 29, 1966 and was thirty-six years old, which is defined as a younger individual age 18-44, on the alleged disability date (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. The claimant has acquired job skills from past relevant work (20 CFR 404.1568).
> ...
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566 and 404.1568(d)).
> ...
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 28, 2003 through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 12-19.

////

////

Plaintiff requested that the Appeals Council review the ALJ's decision. However, on April 15, 2009, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id.* at 1-5.

This appeal followed. Plaintiff contends that the ALJ erred in failing to find that plaintiff's reactive airway disease was a severe impairment; rejecting the opinion of plaintiff's treating physician without a legitimate basis for doing so; failing to credit plaintiff's testimony and third party statements as to the nature and extent of her functional limitations; and failing to properly assess plaintiff's RFC and failing to credit the testimony of the vocational expert in response to the hypothetical which accurately reflected her limitations. Dckt. No. 23.

II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. ANALYSIS

Plaintiff contends that the ALJ erred in failing to find that plaintiff's reactive airway disease was a severe impairment. An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). If an ALJ cannot clearly determine the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step. S.S.R. No. 85-28. Step two is "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28.

In this case, the ALJ made the following findings regarding plaintiff's reactive airways disease:

> Although the claimant suffers from reactive airways disease, a pulmonary and sleep consultation on April 25, 2007 noted that her asthma was currently in remission and controlled with medications. Pulmonary function testing showed essentially normal spirometric values (B25F/9-12). The claimant continues to smoke one pack per day of cigarettes, leading the undersigned to conclude that her respiratory condition is not as limiting as alleged. In light of the foregoing, the undersigned finds that the claimant's reactive airway disease does not rise to the level of a severe impairment.

A.R. at 14.

Plaintiff argues that the ALJ failed to accurately depict the evidence regarding plaintiff's reactive airway disease, as one medical report noted that COPD, emphysema, and hypoxemia had to be ruled out, and another report documented abnormalities characteristic of emphysema. Dckt. No. 23 at 22-23. Plaintiff further argues that she continued to smoke because she suffered from tobacco dependence, and not because her reactive airway disease was not a severe impairment. *Id.* at 23. Defendant contends that substantial evidence supports the ALJ's

findings. Dckt. No. 29 at 8. Specifically, defendant notes that the plaintiff did not testify that her pulmonary condition prevented her from working. *Id.*

The medical record that the ALJ refers to states: "A pulmonary function study on the day of the evaluation revealed a forced vital capacity of 3.11 liters or 88% of predicted. The FEV1 was 23.6 liters or 89% of predicted, and the FEV1/FVC ratio was 85%. Flow rates were slightly reduced in the large airways. PFT shows essentially normal spirometric values." AR 507. The impression given was "Asthma, currently in remission, controlled with medications. Rule out COPD, emphysema, and hypoxemia." *Id.* The record that plaintiff refers to states that she has hyper-inflated lungs and a very low diffusion capacity. *Id.* at 511. The report states that such symptoms are "characteristic of emphysema" and that "in view of the severity of the diffusion defect, studies with exercise would be helpful to evaluate the presence of hypoxemia." *Id.* A report of plaintiff's pulmonary and sleep consultation states that plaintiff has a history of asthma and has "multiple respiratory problems." *Id.* at 504.

During the hearing, the ALJ asked plaintiff what health problems "stop[ped her] from working full-time." AR 24. She replied "I have a problem with my foot. I have fibromyalgia. I have neck, back, shoulder problems, chronic pain, fatigue and mental." *Id.* Upon further questioning from the ALJ, she clarified that her mental problem was depression. *Id.*

Although the ALJ's comment on plaintiff's continuing to smoke misses the point,[2] there nonetheless is substantial evidence in the record to support the ALJ's conclusion that plaintiff's reactive airways disease did not constitute a severe impairment–that is, that the disease is a slight abnormality that has no more than a minimal effect on plaintiff's ability to work. First, as noted above, plaintiff did not identify her reactive airways disease as a problem that stopped her from working. Second, her asthma was in remission and was controlled by medication. Although

---

[2] The fact the plaintiff continues to smoke may evidence the extent of her tobacco dependency (even addiction), but it in no way substitutes for the medical evidence as to the severity of her condition and does not establish that plaintiff's condition is less serious than alleged.

6

other medical records may provide contradictory evidence, the ALJ's findings of fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d at 847. The ALJ's finding that plaintiff's reactive airways disease is not a severe impairment is supported by substantial evidence and therefore must be upheld.

Next, plaintiff argues that the ALJ erred in rejecting the opinion of her treating physician, Dr. Bacay, without a legitimate basis for doing so. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.* To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at 830. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831. In addition, an ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence. *See Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).

Dr. Bacay was plaintiff's treating physician from May 9, 2006 through February 1, 2008. AR 487. She filled out a form entitled "Complete Medical Report of Physical and Mental Work-Related Impairments," in which she opined that plaintiff could never lift or carry even up to 10 pounds; could sit, stand or walk for a total of zero hours in an eight-hour workday, and for zero hours at a time; was restricted in her exposure to heights, moving machinery, vibrations, noise, dust, fumes, odors, smoke, chemicals, wetness, dryness, and temperature extremes; had a poor

7

ability to follow work rules, relate to co-workers, deal with the public, use judgement, interact with supervisors, deal with work stress, function independently, and maintain attention and concentration, understand, remember and carry out complex, detailed but not complex, and simple job instructions; had a fair ability to maintain personal appearance, behave in an emotionally stable manner, behave predictably in social situations; and a poor ability to demonstrate reliability. *Id.* at 488-90. Dr. Bacay further opined, "due to ongoing pain, she's not mentally capable of performing any job, even sedentary." *Id.* at 490.

Regarding plaintiff's treating physicians' opinions, the ALJ wrote:

> The undersigned gives less weight to the assessments of the claimant's treating physicians to the effect that she is unable to perform even sedentary work (B20F, B22F, B23F/2). The course of treatment pursued by these doctors has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported. For example, although the claimant's podiatrist stated that she is disabled and unable to maintain employment, he treats her only for the residual effects from her left foot surgery and sees her on a maintenance basis every three months. This treatment does not support his opinion regarding her ability to work, particularly as he does not treat her for any other impairments (B23F/2). Further, they all apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

*Id.* at 17.

Thus, the ALJ gave two reasons for rejecting Bacay's opinion: 1) the course of treatment pursued by Bacay was not consistent with what one would expect if plaintiff were truly disabled; and 2) Bacay relied heavily and uncritically on plaintiff's subjective report of her symptoms and limitations.

The ALJ did not explain what he meant by his second reason for discrediting Dr. Bacay's opinion, that Dr. Bacay relied heavily and uncritically on plaintiff's subjective complaints, but the record does not appear to support this broad assertion. Dr. Bacay ordered laboratory tests, MRIs, and pulmonary testing to confirm her diagnoses. Examination and testing reflected in Dr. Bacay's treatment notes document plaintiff's decreased range of motion in the neck and

8

decreased grip strength on the right; tenderness on the right shoulder going up to her right side of her neck, to the right occiput; an inability to flex her neck secondary to pain; and significant back pain. AR 375. MRI results confirmed some of plaintiff's complaints, showing that she had an osteophytic area and lumbar disc disease with some lumbar stenosis. *Id.* at 417. A pulmonary function study showed that plaintiff had a severely reduced diffusing capacity and overinflation. *Id.* at 511. Lab reports showed that plaintiff had elevated cholesterol and triglyceride levels and abnormal findings suggesting hypothyroidism or hyperthyroidism. *Id.* at 410-411. As discussed below, Dr. Bacay expressed a rather extreme interpretation of plaintiff's functional limitations, but the record shows that she did not rely solely upon plaintiff's subjective complaints in forming her opinions, and that some of plaintiff's subjective complaints were supported by objective medical evidence.

As for the first reason the ALJ stated for not accepting Dr. Bacay's conclusion as to disability, plaintiff argues that Dr. Bacay's treatment of plaintiff was "exactly what one would expect."

> Dr. Bacay's diagnoses included degenerative disc disease, fibromyalgia, migraine headaches, depression, insomnia, reactive airway disease, COPD, emphysema, hyperlipidemia, and tobacco dependence...Dr. Bacay's treatment of these conditions included prescriptions for Ultram, Skelaxin, Norco, and Soma for pain; prescriptions for Topamax and Maxalt for her headaches; a prescription of Lovastatin for her high cholesterol, Valium for anxiety, Albuterol, Advair disc, Spira, nebulizer, and oxygen for her reactive airway disease, COPD, and difficulty breathing, a prescription for Rozerem for her insomnia; and a prescription of Cymbalta for depression....In addition, Dr. Bacay also sought insurance authorization for massage therapy (TR 375), ordered laboratory tests (TR 410-411), ordered MRIs which confirmed "an osteophytic area in the C5-C6 as well as lumbar disc disease with some lumbar stenosis" (TR 329-330, 417); ordered a pulmonary function test which documented "a severely reduced diffusing capacity and overinflation" which were characteristic of emphysema (TR 511); advised her to stop smoking due to her "severe reactive airway disease" and wanted her to try Chantix, a new drug that worked for tobacco cessation (TR 415); and referred her to Dr. Arrogante, a pain specialist (TR 417).

Dckt. No. 23 at 26. Plaintiff argues that Dr. Bacay's treatment of plaintiff does not appear to be

obviously inconsistent with what one would expect. But the ALJ's concern is more specific than that. The focus here is on why he did not fully accept Dr. Bacay's conclusions about plaintiff's ability to work. Although the ALJ could have been more precise in articulating his reasons, a comparison of his stated concern with Dr. Bacay's descriptions reveal adequate evidence to support the ALJ's finding.

The ALJ stated that "[t]he course of treatment pursued by these doctors has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported." But the examples cited by the ALJ show that the specific concern was not that the course of treatment was unexpected, but rather whether Dr. Bacay's reports include findings and objective evidence which do not support a conclusion that plaintiff is unable to perform at least sedentary work. Dr. Bacay opined that plaintiff could sit, stand, and walk for *zero* hours at a time, and for a total of *zero* hours a day, where the next incremental category was one hour a day, and could never lift or carry up to ten pounds, where that was the lightest category on the form. It was not inappropriate for the ALJ to look to Dr. Bacay's treatment records for the presence of objective findings that could support that rather extreme opinion. As defendant argues, Dr. Bacay's stated limitations suggest a total invalid with an inability to sit, stand, walk, or lift anything at all. Yet her records include ranges of motion and neurologic reports which show otherwise. Indeed, the findings by her partner, Dr. Bernard Barclay, state that plaintiff was neurologically intact and had no motor deficits (AR 375-76). While there may be little doubt that plaintiff's condition warrants the treatment provided, there is adequate evidence in the record to support that ALJ's finding that the plaintiff has a residual functional capacity for sedentary work notwithstanding the contrary statement by Dr. Bacay.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied, and

2. The Commissioner's cross-motion for summary judgment is granted; and

////

3. The Clerk is directed to enter judgment for defendant.

DATED: March 25, 2011.

     */s/ Edmund F. Brennan*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE