IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHERYL CARREIRA,

    Plaintiff,                    No. CIV S-09-1672 EFB

    vs.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

    Defendant.               ORDER
_____/

Due to an oversight, the court previously docketed a portion of this order on March 25, 2011. That partial order is hereby vacated and superseded by this order.

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability benefits under Title II and XVIII of the Social Security Act. For the reasons discussed below, the court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment.

I. BACKGROUND

Plaintiff filed an application for disability insurance benefits on July 21, 2006, alleging disability since April 25, 2003. Administrative Record ("AR") 9. Her application was denied initially and upon reconsideration. *Id*. A hearing was held on February 26, 2008, before Administrative Law Judge ("ALJ") Daniel J. Heely. *Id.* at 20-42. Plaintiff was represented by

1

attorney Robert Kolber. *Id.* at 22. Plaintiff and vocational expert George Meyers testified. *Id.* In a decision dated May 29, 2008, the ALJ determined plaintiff was not disabled.[1] *Id.* at 6-19.

The ALJ made the following specific findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since April 28, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*)
> ...
> 3. The claimant has the following severe impairments: left foot fracture, status post multiple surgeries, degenerative joint disease/back strain and depression (20 CFR 404.1520(c)).
> ...

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

>4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>...
>
>5. After careful consideration of the entire record, the undersigned finds that the claimant has a residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she should push and/or pull only occasionally with the left lower extremity. The claimant can occasionally climb ramps, stairs, ladders, ropes or scaffolds, stoop, kneel, crouch or crawl. She can balance frequently. She is limited to reaching occasionally with the bilateral extremities. The client retains the ability to understand, remember and carry out simple job instructions but is limited in her ability to respond appropriately to the general public and should have only occasional public contact.
>...
>
>6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565).
>...
>
>7. The claimant was born on April 29, 1966 and was thirty-six years old, which is defined as a younger individual age 18-44, on the alleged disability date (20 CFR 404.1563).
>
>8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
>9. The claimant has acquired job skills from past relevant work (20 CFR 404.1568).
>...
>
>10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566 and 404.1568(d)).
>...
>
>11. The claimant has not been under a disability, as defined in the Social Security Act, from April 28, 2003 through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 12-19.

////

////

Plaintiff requested that the Appeals Council review the ALJ's decision. However, on April 15, 2009, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id.* at 1-5.

This appeal followed. Plaintiff contends that the ALJ erred in failing to find that plaintiff's reactive airway disease was a severe impairment; rejecting the opinion of plaintiff's treating physician without a legitimate basis for doing so; failing to credit plaintiff's testimony and third party statements as to the nature and extent of her functional limitations; and failing to properly assess plaintiff's RFC and failing to credit the testimony of the vocational expert in response to the hypothetical which accurately reflected her limitations. Dckt. No. 23.

## II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

4

## III. ANALYSIS

### A. Severe Impairment

Plaintiff contends that the ALJ erred in failing to find that plaintiff's reactive airway disease was a severe impairment. An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). If an ALJ cannot clearly determine the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step. S.S.R. No. 85-28. Step two is "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28.

In this case, the ALJ made the following findings regarding plaintiff's reactive airways disease:

> Although the claimant suffers from reactive airways disease, a pulmonary and sleep consultation on April 25, 2007 noted that her asthma was currently in remission and controlled with medications. Pulmonary function testing showed essentially normal spirometric values (B25F/9-12). The claimant continues to smoke one pack per day of cigarettes, leading the undersigned to conclude that her respiratory condition is not as limiting as alleged. In light of the foregoing, the undersigned finds that the claimant's reactive airway disease does not rise to the level of a severe impairment.

AR at 14.

Plaintiff argues that the ALJ failed to accurately depict the evidence regarding plaintiff's reactive airway disease, as one medical report noted that COPD, emphysema, and hypoxemia had to be ruled out, and another report documented abnormalities characteristic of emphysema. Dckt. No. 23 at 22-23. Plaintiff further argues that she continued to smoke because she suffered from tobacco dependence, and not because her reactive airway disease was not a severe

5

1  impairment. *Id.* at 23. Defendant contends that substantial evidence supports the ALJ's
2  findings. Dckt. No. 29 at 8. Specifically, defendant notes that the plaintiff did not testify that
3  her pulmonary condition prevented her from working. *Id.*

4  The medical record that the ALJ refers to states: "A pulmonary function study on the day
5  of the evaluation revealed a forced vital capacity of 3.11 liters or 88% of predicted. The FEV1
6  was 23.6 liters or 89% of predicted, and the FEV1/FVC ratio was 85%. Flow rates were slightly
7  reduced in the large airways. PFT shows essentially normal spirometric values." AR 507. The
8  impression given was "Asthma, currently in remission, controlled with medications. Rule out
9  COPD, emphysema, and hypoxemia." *Id.* The record that plaintiff refers to states that she has
10  hyper-inflated lungs and a very low diffusion capacity. *Id.* at 511. The report states that such
11  symptoms are "characteristic of emphysema" and that "in view of the severity of the diffusion
12  defect, studies with exercise would be helpful to evaluate the presence of hypoxemia." *Id.* A
13  report of plaintiff's pulmonary and sleep consultation states that plaintiff has a history of asthma
14  and has "multiple respiratory problems." *Id.* at 504.

15  During the hearing, the ALJ asked plaintiff what health problems "stop[ped her] from
16  working full-time." AR 24. She replied "I have a problem with my foot. I have fibromyalgia. I
17  have neck, back, shoulder problems, chronic pain, fatigue and mental." *Id.* Upon further
18  questioning from the ALJ, she clarified that her mental problem was depression. *Id.*

19  Although the ALJ's comment on plaintiff's continuing to smoke misses the point,[2] there
20  nonetheless is substantial evidence in the record to support the ALJ's conclusion that plaintiff's
21  reactive airways disease did not constitute a severe impairment–that is, that the disease is a slight
22  abnormality that has no more than a minimal effect on plaintiff's ability to work. First, as noted
23  above, plaintiff did not identify her reactive airways disease as a problem that stopped her from

---

[2] The fact the plaintiff continues to smoke may evidence the extent of her tobacco
dependency (even addiction), but it in no way substitutes for the medical evidence as to the
severity of her condition and does not establish that plaintiff's condition is less serious than
alleged.

6

working. Second, her asthma was in remission and was controlled by medication. Although other medical records may provide contradictory evidence, the ALJ's findings of fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d at 847. The ALJ's finding that plaintiff's reactive airways disease is not a severe impairment is supported by substantial evidence and therefore must be upheld.

### B.  Treating Physician's Opinion

Next, plaintiff argues that the ALJ erred in rejecting the opinion of her treating physician, Dr. Bacay, without a legitimate basis for doing so. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.* To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at 830. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831. In addition, an ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence. *See Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).

Dr. Bacay was plaintiff's treating physician from May 9, 2006 through February 1, 2008. AR 487. She filled out a form entitled "Complete Medical Report of Physical and Mental Work-Related Impairments," in which she opined that plaintiff could never lift or carry even up to 10 pounds; could sit, stand or walk for a total of zero hours in an eight-hour workday, and for zero

7

hours at a time; was restricted in her exposure to heights, moving machinery, vibrations, noise, dust, fumes, odors, smoke, chemicals, wetness, dryness, and temperature extremes; had a poor ability to follow work rules, relate to co-workers, deal with the public, use judgement, interact with supervisors, deal with work stress, function independently, and maintain attention and concentration, understand, remember and carry out complex, detailed but not complex, and simple job instructions; had a fair ability to maintain personal appearance, behave in an emotionally stable manner, behave predictably in social situations; and a poor ability to demonstrate reliability. *Id.* at 488-90. Dr. Bacay further opined, "due to ongoing pain, she's not mentally capable of performing any job, even sedentary." *Id.* at 490.

Regarding plaintiff's treating physicians' opinions, the ALJ wrote:

> The undersigned gives less weight to the assessments of the claimant's treating physicians to the effect that she is unable to perform even sedentary work (B20F, B22F, B23F/2). The course of treatment pursued by these doctors has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported. For example, although the claimant's podiatrist stated that she is disabled and unable to maintain employment, he treats her only for the residual effects from her left foot surgery and sees her on a maintenance basis every three months. This treatment does not support his opinion regarding her ability to work, particularly as he does not treat her for any other impairments (B23F/2). Further, they all apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

*Id.* at 17.

Thus, the ALJ gave two reasons for rejecting Bacay's opinion: 1) the course of treatment pursued by Bacay was not consistent with what one would expect if plaintiff were truly disabled; and 2) Bacay relied heavily and uncritically on plaintiff's subjective report of her symptoms and limitations.

The ALJ did not explain what he meant by his second reason for discrediting Dr. Bacay's opinion, that Dr. Bacay relied heavily and uncritically on plaintiff's subjective complaints, but the record does not appear to support this broad assertion. Dr. Bacay ordered laboratory tests,

8

1 MRIs, and pulmonary testing to confirm her diagnoses. Examination and testing reflected in Dr.

2 Bacay's treatment notes document plaintiff's decreased range of motion in the neck and

3 decreased grip strength on the right; tenderness on the right shoulder going up to her right side of

4 her neck, to the right occiput; an inability to flex her neck secondary to pain; and significant

5 back pain. AR 375. MRI results confirmed some of plaintiff's complaints, showing that she had

6 an osteophytic area and lumbar disc disease with some lumbar stenosis. *Id.* at 417. A

7 pulmonary function study showed that plaintiff had a severely reduced diffusing capacity and

8 overinflation. *Id.* at 511. Lab reports showed that plaintiff had elevated cholesterol and

9 triglyceride levels and abnormal findings suggesting hypothyroidism or hyperthyroidism. *Id.* at

10 410-411. As discussed below, Dr. Bacay expressed a rather extreme interpretation of plaintiff's

11 functional limitations, but the record shows that she did not rely solely upon plaintiff's

12 subjective complaints in forming her opinions, and that some of plaintiff's subjective complaints

13 were supported by objective medical evidence.

14 As for the first reason the ALJ stated for not accepting Dr. Bacay's conclusion as to

15 disability, plaintiff argues that Dr. Bacay's treatment of plaintiff was "exactly what one would

16 expect."

> Dr. Bacay's diagnoses included degenerative disc disease, fibromyalgia, migraine headaches, depression, insomnia, reactive airway disease, COPD, emphysema, hyperlipidemia, and tobacco dependence...Dr. Bacay's treatment of these conditions included prescriptions for Ultram, Skelaxin, Norco, and Soma for pain; prescriptions for Topamax and Maxalt for her headaches; a prescription of Lovastatin for her high cholesterol, Valium for anxiety, Albuterol, Advair disc, Spira, nebulizer, and oxygen for her reactive airway disease, COPD, and difficulty breathing, a prescription for Rozerem for her insomnia; and a prescription of Cymbalta for depression....In addition, Dr. Bacay also sought insurance authorization for massage therapy (TR 375), ordered laboratory tests (TR 410-411), ordered MRIs which confirmed "an osteophytic area in the C5-C6 as well as lumbar disc disease with some lumbar stenosis" (TR 329-330, 417); ordered a pulmonary function test which documented "a severely reduced diffusing capacity and overinflation" which were characteristic of emphysema (TR 511); advised her to stop smoking due to her "severe reactive airway disease" and wanted her to try Chantix, a new drug that worked for tobacco cessation (TR 415); and referred her to Dr. Arrogante, a pain specialist (TR 417).

26 Dckt. No. 23 at 26. Plaintiff argues that Dr. Bacay's treatment of plaintiff does not appear to be

obviously inconsistent with what one would expect. But the ALJ's concern is more specific than that. The focus here is on why he did not fully accept Dr. Bacay's conclusions about plaintiff's ability to work. Although the ALJ could have been more precise in articulating his reasons, a comparison of his stated concern with Dr. Bacay's descriptions reveal adequate evidence to support the ALJ's finding.

The ALJ stated that "[t]he course of treatment pursued by these doctors has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported." But the examples cited by the ALJ show that the specific concern was not that the course of treatment was unexpected, but rather whether Dr. Bacay's reports include findings and objective evidence which do not support a conclusion that plaintiff is unable to perform at least sedentary work. Dr. Bacay opined that plaintiff could sit, stand, and walk for *zero* hours at a time, and for a total of *zero* hours a day, where the next incremental category was one hour a day, and could never lift or carry up to ten pounds, where that was the lightest category on the form. It was not inappropriate for the ALJ to look to Dr. Bacay's treatment records for the presence of objective findings that could support that rather extreme opinion. As defendant argues, Dr. Bacay's stated limitations suggest a total invalid with an inability to sit, stand, walk, or lift anything at all. Yet her records include ranges of motion and neurologic reports which show otherwise. Indeed, the findings by her partner, Dr. Bernard Barclay, state that plaintiff was neurologically intact and had no motor deficits. AR 375-76. While there may be little doubt that plaintiff's condition warrants the treatment provided, there is adequate evidence in the record to support that ALJ's finding that the plaintiff has a residual functional capacity for sedentary work notwithstanding the contrary statement by Dr. Bacay.

### C. Plaintiff's Testimony and Third Party Statements

Plaintiff argues that the ALJ erred in rejecting her testimony and her sister's third party statement. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g.,*

*Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *Id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir.2007); *Smolen v. Chater*, 80 F.3d at 1284. "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). To support a lack of credibility finding, the ALJ must "point to specific facts in the record which demonstrate that [the claimant is in less pain or the claimant's symptoms are less severe] than she claims." *Vasquez v. Astrue*, 547 F.3d 1101, 1105 (9th Cir. 2008).

Here, the ALJ found that plaintiff was not fully credible. He provided the following reasons for disbelieving her testimony: 1) her treatment had been "routine and conservative in nature" and she was not a candidate for surgery; 2) although plaintiff took medication, which weighed in favor of her credibility, the medication had been "relatively effective" in controlling her symptoms; 3) objective clinical findings were consistently normal or minimally abnormal;

11

and 4) she had not sought mental health treatment for her depression, although her primary care doctor prescribed her antidepressants. The ALJ noted that although her daily activities were limited, he did not consider this to be strong evidence in favor of her credibility, because her daily activities could not be objectively verified, and in light of the "relatively weak" medical evidence, even if plaintiff's daily activities were limited, the limitations must be due to "other reasons" rather than her medical condition. AR 16.

Plaintiff argues that her treatment was not routine and conservative, as she took narcotic pain medications, used a TENS unit, and had trigger point injections and massage therapy; that she testified that she was in great pain despite the medications; that objective test results corroborated some of her subjective complaints; that she received appropriate mental health care from her primary care physician; and that daily activities could never be verified "short of spying on [her] twenty four hours a day." But, as explained above, medical evidence in the record does not support plaintiff's testimony, for example, that she could not sit or stand for more than 15 minutes. Although as the ALJ noted, plaintiff's medications and limited daily activities weighed in favor of finding her credible, those factors were outweighed by the other factors he listed. As the ALJ provided legally adequate reasons for finding that plaintiff was not fully credible, this court may not reweigh the evidence, but must affirm the ALJ's credibility finding.

Plaintiff's sister submitted a third party statement in which she described plaintiff's limitations and daily activities. The ALJ assigned little weight to her statement. "Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir.1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition); 20 C.F.R. § 404.1513(d)(4) (providing that evidence provided by lay witnesses may be used to show "the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work"). "If the ALJ wishes to discount the testimony of

the lay witnesses, he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919; *see also Bruce v. Astrue*, 557 F.3d 1113 (9th Cir. Mar.5, 2009) (finding that the ALJ erred in rejecting, without sufficient comment, the lay witness testimony of the plaintiff's wife); *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir.2006) (finding that the ALJ erred by failing to consider the lay testimony of two witnesses about how the plaintiff's impairments affected his ability to work).

Here, the ALJ did not disregard plaintiff's sister's statement, but gave two reasons for assigning it little weight: 1) plaintiff's sister had a "vested interest" in the outcome of the case, and 2) "she had to rely, at least in part, on the claimant's subjective complaints." AR 16. It is unclear what the ALJ meant by the first reason. There is no evidence in the record to suggest that plaintiff's sister would receive money if plaintiff's case were resolved favorably. Insofar as the ALJ meant that the witness was biased as a result of being the plaintiff's sister, this was not a proper reason to discount her testimony. *See Smolen*, 80 F.3d at 1289 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant everyday is of particular value...such lay witnesses will often be family members"). The ALJ's second reason is adequate, but it only applies to some of plaintiff's sister's statements–that is, the statements which derive from plaintiff's complaints rather than plaintiff's sister's observations. Although it is difficult to determine which statements were based on plaintiff's subjective complaints, reviewing plaintiff's sister's statement reveals the following evidence that could not have been based on plaintiff's complaints:

- Plaintiff often takes two or three days to return her sister's phone call.
- Plaintiff used to be a "clean freak" and "always had a spotless house" but now she doesn't care.
- Plaintiff visits her sister three to four times a month and her parents almost every weekend.

13

- If you ask plaintiff to get something she often forgets what you asked her for.
- Plaintiff's sister does not think that plaintiff handles stress well now, but she used to handle it better.
- Plaintiff seems very depressed. She used to talk a lot more. At times she cuts a conversation short.
- Plaintiff used to be happy and full of ambition. Now she is "angry and bitter and her mouth is not so nice. She cries at the drop of a hat and is easily offended. So I am cautious what I say to her that she doesn't take it wrong."

AR 130-38. Where an ALJ has failed to properly discuss lay testimony, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. *See Stout*, 454 F.3d at 1054. If only the above testimony were fully credited, the court finds that no reasonable ALJ would have reached a different disability determination. Therefore, the ALJ's error was harmless.

### D. VE Testimony

Finally, plaintiff argues that the ALJ failed to credit the VE's testimony in response to the hypothetical which accurately reflected her limitations. Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. *Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988). Here, plaintiff argues that the ALJ should have credited her treating physician's opinion, her own testimony,

and her sister's statement, and therefore should have assessed a different RFC and should have posed a different hypothetical to the VE. The court has already rejected these arguments. The hypothetical posed to the VE was based on the ALJ's assessed RFC findings. Thus, defendant is entitled to summary judgment on this claim.

Accordingly, IT IS HEREBY ORDERED that:

1. The court's March 25, 2011 order is vacated;
2. Plaintiff's motion for summary judgment or remand is denied;
3. The Commissioner's cross-motion for summary judgment is granted; and
4. The case remains closed.

DATED: March 29, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE